IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOMINGINHO POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 C 4146 |
| ) | |
| ) | Judge Joan B. Gottschall |
| THE PAYDAY LOAN STORE OF ILLINOIS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Domininho Powell ("Powell" or "plaintiff") filed a four-count class action complaint against The Payday Loan Store of Illinois[1] ("Payday"), alleging violations of the Equal Credit Opportunity Act ("ECOA"), the Truth in Lending Act ("TILA"), the Telephone Consumer Protection Act ("TCPA"), and the Illinois Consumer Fraud Act ("ICFA"). Plaintiff accuses Payday of improperly inducing borrowers into repeatedly refinancing (*i.e.*, "flipping") high interest rate loans that are secured by the borrowers' automobiles. Payday has moved to compel arbitration.

In conjunction with each of plaintiff's loans with Payday, he executed an Installment Loan and Security Agreement ("Agreement"). Def.'s Mem. at Ex. 1. Each Agreement contains an arbitration provision and also requires plaintiff to arbitrate his claims on an individual, rather than a class-wide, basis. The arbitration provision reads:

### ARBITRATION

Any claim, dispute or controversy arising from or relating to (a) the loan made to you, (b) the actions of you, us, or third parties, or (c) the validity of this arbitration provision

---

[1] Defendant states that it is mistakenly referred to as "Payday Loan Store of Illinois, Inc." in plaintiff's complaint. Def's Mem. at 1.

("Claim") shall, upon the election by either you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Code of Procedure of the applicable arbitration organization in effect when the Claim is filed. You may select the arbitration organization from the following: either the National Arbitration Forum (1-800-474-2371, www.arb-forum.com), or the American Arbitration Association (1-800-778-7879, www.adr.org). If you do not select an arbitration organization, you agree that we may select one. If a judgment has been entered in a suit involving you and us, then neither we nor you can demand arbitration. This means that either we or you may sue the other party in court or initiate other remedies; however, if either we or you demand arbitration before a judgment in entered, then we and you will arbitrate the Claim. Any arbitration hearing that you attend will take place in the federal judicial district where you reside or where you obtain the loan, at your election. The arbitrator(s) (the people who decide the Claim) will apply relevant law; however, the arbitrator(s) will not apply federal or state rules of civil procedure or evidence. The decision of the arbitrator(s) will be evidenced by written, reasoned findings of fact (a determination of what happened) and conclusion of law (legal consequences of the facts). If you ask us to, we will advance all or part of the filing and hearing fees that you will have to pay for the arbitration not to exceed $1,000; the arbitrator(s) will decide whether we or you will ultimately pay those fees. After the arbitrator(s) makes a decision, we or you may apply to any court having jurisdiction to enter a judgment based on teh [sic] decision of the arbitrator(s). This arbitration agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. 1 et seq., as amended. **If we or you choose arbitration, we and you no longer have the right to go to court or to have a jury trial, except for any right of appeal provided by the Federal Arbitration Act. If arbitration is chosen, you do not have the right to have any claim arbitrated as a class action under the rules of the arbitration organization or under any other rules of civil procedure. No joinder or consolidation of parties, except for joinder of parties to the same loan agreement, will be permitted in any arbitration.** If any part of this provision to any particular Claim or subject matter is held to be invalid or unenforceable, the remainder of this arbitration provision and the application of this provision to any other Claims will remain valid [and] enforceable. In the event of a conflict between the arbitration organization's code and this provision, this provision controls.

READ THIS PROVISION CAREFULLY. IT LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO A JURY TRIAL AND YOUR RIGHT TO PURSUE A CLAIM AS A CLASS ACTION.

Def.'s Mem. at Ex. 1. Due to a consent decree prohibiting the National Arbitration Forum from accepting any consumer arbitrations, the AAA is the only available arbitral forum for plaintiff.

**I.     Analysis**

The Federal Arbitration Act establishes a federal policy favoring arbitration of disputes that requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). When parties have made an agreement to arbitrate a dispute, the party opposing arbitration bears the burden of proving that the claims at issue should not be subjected to arbitration. *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000). Because all of plaintiff's arguments center on the costs of arbitration, the court turns to that issue first.

**A.     AAA Fees**

There are two types of fees assessed by the AAA – administrative fees and arbitrator fees. Further, the AAA assesses arbitration costs based on the size of the claim, as measured by the AAA. In order to determine what fees would apply, the court must determine whether plaintiff's claims would fall under the AAA's "Consumer Arbitration Costs" or the more expensive "Commercial Arbitration Costs." The AAA applies Consumer Arbitration Costs to claims that do not exceed $75,000; for claims in excess of $75,000, the Commercial Arbitration Costs apply.

**1.     Administrative Fees**

According to the AAA Consumer Arbitration Costs, "Administrative fees are based on the size of the claim and counterclaim in a dispute. They are based only on the actual damages and not on any additional damages, such as attorneys' fees or punitive damages." Def.'s Reply at Ex. 1. Thus, the Consumer Arbitration Costs will apply if plaintiff's actual damages are less than $75,000.

Plaintiff's actual damages include $5,009, which is the amount plaintiff paid to Payday. Beyond that, plaintiff claims he is entitled to statutory damages for certain claims. In an abundance of caution, Payday has included statutory damages in its calculation of "actual damages." Because plaintiff cannot

reach the $75,000 cut-off even if statutory damages are included, the court will follow Payday's lead and assume for purposes of this analysis that the AAA would include statutory damages to figure out the value of the claim. Plaintiff asks for the following statutory damages: (1) $8,000 for eight TILA violations which includes statutory damages of $1000 per violation; and (2) $15,000 for ten TCPA violations.[2] Because plaintiff's actual damages (even assuming statutory damages are included) are $28,009, his demand for arbitration would be subject to the Consumer Arbitration Costs. Under the Consumer Arbitration Costs, a plaintiff does not pay any Administrative Fees.

### 2. Arbitrator Fees

With respect to arbitrator fees, the Consumer Arbitration Costs states that "If the consumer's claim or counterclaim is greater than $10,000, but does not exceed $75,000, then the consumer is responsible for one-half the arbitrator's fees up to a maximum of $375." Def.'s Rep. at Ex. 1. Plaintiff alleges that because this section of the Consumer Arbitration Costs does not contain the same qualifier as that discussed above (*i.e.*, that the value of the claim is limited to actual damages), the value of his claims for purposes of determining an arbitrator's fees must include punitive damages, which would mean that the more expensive Commercial Arbitration Costs would apply. Payday argues that the AAA includes only actual damages in its calculation of arbitrator's fees.

The court acknowledges that the language in the Consumer Arbitration Costs document concerning arbitrator's fees does not specifically explain that such fees are based only on the actual

---

[2] In his response, plaintiff lists statutory damages of $8,000 for TILA and $15,000 for ICFA. He also notes that, in addition to these statutory damages, he is seeking "actual damages" but does not provide a dollar amount for the actual damages associated with his claims. Because plaintiff bears the burden of proving that the cost of arbitration is prohibitively expensive, and he failed to provide the court with any breakdown of his actual damages associated with his claims, the court has not included any dollar amounts, beyond the $5,009, for actual damages.

damages in a claim. Any ambiguity, however, is resolved by the affidavit of Gerald Strathmann, Assistant Vice President for the American Arbitration Association. Pl's Mot. To Supp. Rec. at Ex. Strathmann. In his affidavit, Strathmann explains that he oversees all consumer case administration at all AAA offices. *Id.*. Strathmann makes clear that,

> Pursuant to AAA's *Consumer Rules*, under the Rule C-8 "Administrative Fees and Arbitrator Fees," if the consumer's actual damages claim or counterclaim, exclusive of punitive damages and attorney's fees, is greater than $10,000 but does not exceed $75,000, a consumer is responsible for one-half of the arbitrator's fee, up to a maximum of $375 as his or her portion of the arbitrator's fee. The consumer will pay nothing further for arbitrator fees. The consumer does not pay any administrative fee to the AAA.

*Id.* Thus, because plaintiff's actual damages fall between $10,000 and $75,000, the AAA's Consumer Arbitration Costs apply, both with respect to the AAA's administrative fees and the arbitrator's fees. As a result, in order for plaintiff to file a demand for arbitration in this matter, his AAA costs would be capped at $375. Def.'s Rep. at Ex. 1 (arbitrator fee is either $125 (half of the cost of a "Desk Arbitration or Telephone Hearing") or $375 (half of the cost of an "In Person Hearing")).

    B.    **Unconscionability**

        1.    **Arbitration Clause**

Plaintiff first argues that the arbitration clause in the Agreement should be stricken because the costs associated with filing a demand for arbitration with the AAA are prohibitively expensive. The United States Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant … from effectively vindicating [his] federal statutory rights in the arbitral forum." *Green Tree*, 531 U.S. at 90. Plaintiff's argument is based on his assertion, rejected above, that the AAA would impose its Commercial Arbitration Rules to his claims. Because this is not the case, plaintiff's claim that it would cost him $16,145 to pursue an arbitration at the AAA is not accurate. Further, in

light of the court's conclusion that the AAA Consumer Arbitration Costs apply, plaintiff's reliance on *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006), misses the mark. In *Kinkel*, the court determined that an arbitration clause was prohibitively expensive where the cost of arbitration would have been $125 plus attorneys' fees and the underlying claim involved actual damages of only $150. 857 N.E.2d at 268. In *Kinkel*, unlike this case, the plaintiff would have been forced to pay more for the arbitration itself than his claim was worth. Here, plaintiff will incur a $375 fee and claims he is owed approximately $100,000 in damages. *Kinkel* is clearly distinguishable. Because $375 is similar to the $350 filing fee he paid in filing the instant case in this court, the court does not conclude that the costs of arbitration are prohibitively expensive, especially in light of the fact that Payday will advance plaintiff $1000 toward any arbitration fees. *See* Def.'s Mem. at Ex. 1 ("[W]e will advance all or part of the filing and hearing fees that you will have to pay for the arbitration not to exceed $1,000[.]").

Plaintiff also argues that the arbitration clause is procedurally unconscionable because of the circumstances under which plaintiff entered into the contract. He argues that he was fraudulently induced into signing the Agreements subsequent to his first loan transaction with Payday, and that the Agreements are the product of duress. These challenges, because they are directed to the contract as a whole, and are not limited to the arbitration clause itself, must be resolved by the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (claim of fraud in the inducement of the entire contract must be resolved by the arbitrator, not the court); *see also James v McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005) ("[A] court may consider a claim that a contract party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud.").

6

### 2.     Class Action Waiver

Plaintiff argues that the class action waiver in the Agreement is substantively unconscionable because: (1) it is one-sided in that it applies to claims by borrowers only; (2) it was designed to permit Payday "to continue to abuse consumers with impunity by effectively blocking all challenges by rendering them prohibitively expensive"; and (3) concealing such from the consumer at the time of contracting.[3] Pl.'s Resp. at 15.

As the Supreme Court of Illinois made clear in *Kinkel*,[4] class action waivers are not *per se* unconscionable. 857 N.E.2d at 278 ("It is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation, but to prefer to resolve the claims of customers or clients individually."). *Kinkel* explained that substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." 857 N.E.2d at 267 (quoting *Maxwell v. Fidelity Financial Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)). In *Kinkel*, a plaintiff sued a cell phone provider arguing that a $150

---

[3] Without elaboration, plaintiff mentions in a single sentence that the class action waiver was "conceal[ed] … from the consumer at the time of contracting." Pl.'s Resp. at 15. The court does not agree that the class action waiver was "conceal[ed]" or unfairly hidden in a "maze of fine print where it was unlikely to be noticed, much less read." *Kinkel*, 857 N.E.2d at 265. In the two-page document, the class action waiver is mentioned on the first page just above the signature line, and again in the description of the arbitration provision. The arbitration provision (which included the class action waiver) is set apart; it is twice the width of the other paragraphs and is set off with a bold heading "**Arbitration**." It clearly states, in bold, that if arbitration is chosen, neither party has the right to have any claim arbitrated as a class action. Thus, the court does not conclude that the class action waiver was "conceal[ed]."

[4] The court notes that the plaintiff cited to many non-Illinois cases in his briefing. Because *Kinkel* is on point, the court relies on that case instead of looking to other states' courts.

early cancellation fee was an improper penalty under the law. *Id*. at 254. Pursuant to the standard service agreement, the plaintiff agreed to mandatory arbitration and a class action waiver. *Id*. The *Kinkel* court stressed that any challenge to a class action waiver must be analyzed on case-by-case basis, recognizing that such analysis is highly fact-specific. *Id*. at 275. Ultimately, the court found that the class action waiver was unconscionable where the cost of arbitration was $125 and the actual damages were $150. *Id*. at 274. In addition, the court relied on the fact that it would not be "obvious to the typical consumer" that he had a claim for an improper penalty, without the aid of an attorney. *Id*. at 267-68. Because a claimant would likely need an attorney and would be forced to pay $125 to file the arbitration, the claimant, even if he were to prevail on his claim and receive $150 in damages, would not be made whole. *Id*. at 268. Finally, the court also relied on the fact that the cost of arbitration was not disclosed in the contract. *Id*. at 275.

*Kinkel* also looked to patterns emerging from other states and concluded that "[A] class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." *Id*. at 271-274 (noting that many courts invalidate a class action waiver where some or all of the following factors are present: the contract limits the types of damages available to the plaintiff in arbitration, the contract restricts the plaintiff to a forum where the costs are prohibitively expensive, disputes between the parties predictably involve small amounts of damages, the site of arbitration would necessarily involve great expense to the plaintiff, the exclusion of a class action would make it unlikely that the plaintiff would secure competent counsel, the waiver lacked mutuality because the defendant would not be likely to bring a class action against its customers, and a confidentiality

agreement was part of the contract).

The court turns, therefore, to the facts of this case and considers the factors listed in *Kinkel*. The first, and perhaps most important, task is a comparison of the potential damages to arbitration costs. Here, there is great disparity between the amount of plaintiff's damages and the costs of arbitration; plaintiff assesses his individual damages at approximately $100,000 and he need only pay $375 to file his demand for arbitration. This is not a scenario where individual plaintiffs would seek small or de minimus damages, thus necessitating a class action to allow those claims to be pooled together. Indeed, plaintiff seeks significant damages. This factor strongly supports a finding that the class action waiver should be enforced.

The question of whether or not plaintiff's claims are the type that a non-lawyer would be able to understand is a closer call. Plaintiff alleges that,

> The defendant lender regularly and systematically makes loans to Illinois consumers at interest rates at 300% and above that call for two payments: one small payment due approximately a month after closing, and another balloon payment for the balance of the loan due the month after that. This scheme is designed to make the first payment affordable and the second payment unaffordable.
>
> [Payday] takes payments by cash or certified funds, only, so customers typically make payments in person. When customers come in to make their first payment, [Payday's] standard and systematic practice is to tell them that they must sign new loan documents, using the balloon payment it knew in the beginning the borrower could not afford, and the threat of repossession of their car as leverage if the borrower protests. Customers like plaintiff typically do sign new loan papers, but only do so because they were either induced to believe that this is the way loans are "supposed to work" or because they believe they have no other reasonable choice, or both. [Payday] tricked plaintiff with this scheme nine times between June 2008 and March 2009.
>
> …
>
> The practice of signing a consumer to one loan with the intent to bring them into another loan is called "loan flipping."

Compl. at ¶¶ 2-3, 7. Plaintiff alleges that Payday set up a scheme whereby its customers would be

9

"tricked" into thinking they were paying off the original loan, when in fact each time they came in to make a payment they actually were entering into a new loan agreement with Payday. Clearly, if his allegations are correct, plaintiff was tricked by Payday into entering into eight additional loans over the course of a year and a half. However, plaintiff alleges that, without the assistance of counsel, he realized in April 2009 that something was amiss when he noticed that he had already paid $5,000 for a loan that was supposed to cost $1,135.59. The nature of the alleged scheme suggests that many months may pass before a customer even realizes that something is wrong. In light of the fact that a significant amount of time could elapse before a plaintiff might realize that he was being tricked, and in light of the fact that a lawyer would be necessary to assist the plaintiff in pursuing his claims, this factor weighs in favor of unconscionability.

The remaining factors examined by the *Kinkel* court strongly support a finding that the waiver should be enforced. Ultimately, these factors, combined with the fact that it is not prohibitively expensive for plaintiff to arbitrate his claims, lead the court to uphold the class action waiver. The Agreement at issue does not limit the type of damages plaintiff may receive in arbitration. Arbitration would not be cost-prohibitive given the spread between plaintiff's potential damages and the relatively small cost of arbitration present in this case.[5] This is not a case where plaintiff's damages are so small that neither he nor a lawyer would be interested in pursuing an individual action. Plaintiff's potential damages are in excess of $100,000 and he already has secured a lawyer to represent him. Finally, the Agreement does not contain a confidentiality agreement. While true that the class action waiver is not

---

[5] Because arbitration is not cost-prohibitive, the court does not view the fact that the relatively small fee associated with arbitration was not disclosed in the Agreement as weighing in favor of unconscionability. The failure of the defendant to disclose the cost of the arbitration was significant in *Kinkel* because the amount of plaintiff's damages and the cost of arbitration were so similar. That is not the case here.

mutual because Payday is unlikely to sue its customers in a class action, the overwhelming balance of factors here supports the court's conclusion that the class action waiver should be upheld.

### C. Motion to Stay

The Federal Arbitration Act mandates that the court issue a stay when an issue in the case is subject to arbitration. 9 U.S.C. § 3. Because plaintiff's claims are subject to arbitration, the court must stay the present case, pending the outcome of the arbitration proceedings. Payday's motion to stay is granted.

## II. Conclusion

Payday's motion to compel arbitration of plaintiff's claims [13-1] and motion to stay the proceedings [13-2] is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 28, 2010